U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
NOV 15 2010
CHRIS R. JOHNSON, CLERK
BY
           DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID STEBBINS                                                        PLAINTIFF

vs.                              Civ. No. 10-3086

WAL-MART STORES, INC.                                              DEFENDANTS

## MOTION FOR DECLARATORY JUDGMENT

Comes now Plaintiff David Stebbins, who respectfully moves for the court to declare the following rights in his favor.

On Tuesday, November 8, 2010, at approximately 8:36PM, I sent Defendants a formal offer for a contract, via email. The contract stated that any attempts to communicate with me, including if I initiate the communication, and they do not cease communications with me on the spot, would constitute their acceptance of that contract. I understand how, at first glance, this may be construed as a "frivolous lawsuit," but please hear me out.

Along with the method of accepting the contract, it stated, among other things, the following:
1. We must initially refer any legal disputes between us to semi-binding arbitration, where they are bound, but I am not, using the services of www.net-arb.com.
2. If they do not accept my invitation to arbitrate within 24 hours after receiving it, I automatically won my case, and the relief requested, regardless of the merits of the case.

By the way, Net-ARB (as I will refer to it, from this point forward) is an online arbitration firm. Using the power of the Internet when it comes to business, they are able to cut 90% of their costs and give arbitration hearings for as little as $299.00.

Anyway, they accepted this contract on the date of Thursday, November 11, 2010, at approximately 9:45PM, when I purchased a gallon of milk from them. I used a paper check, instead of cash or a debit card. to make this purchase; apparently, the Defendants have implemented new policies about check usage, since I last used a paper check; this is probably designed to fight check-bouncers. Along with the paper check, itself, which had my name and street address on the check (along with my handwritten signature), they also requested to see my ID. When I gave the cashier my valid Arkansas driver's license, she typed in my driver's license number, manually. She had every opportunity in the world to know who I was.

Adding to this case is the fact that the handwritten signature on the paper check was not enough for them; instead, they wanted me to confirm my handwritten signature by having me write it into their touch-sensitive merchant pad!

Conclusively, as the formal offer said that, if they entertain my attempts to communicate with them, they accept my contract, and they had every opportunity in the world to know who I was. The only explanation is that the cashier was never told that I was not allowed in their store.

Therefore, they accepted my offer. If they did not read the offer when I sent it to them, that is the equivalent of signing a more conventional contract without reading it.

Wal-Mart is likely to use a series of counter-arguments against me, to convince you that there was no contract. I will now take this opportunity to explain what I perceive as the most likely counter-arguments, and explain how they reek with hypocrisy and double standards.

First, they are likely to argue that the formal offer was too subtle to be considered a genuine offer. This is simply untrue, and, if the Defendants use this argument, it would prove that they are hypocrites. The defendants have a website called www.walmart.com. At the bottom of all of their web

pages, there is a link called "terms of service." Clicking on that link takes you to a binding contract. According to this contract, simply *using* the website, let alone making a full-blown commercial transaction, like I did on Nov. 11, 2010, constitutes a person's unconditional acceptance of those terms. The link to these terms of service are at the bottom of the page, in a very inconspicuous place on the web page; you literally have to search for this link to find it.

Despite this, such inconspicuously-placed terms of service are actually perfectly valid. The reason that the courts have given is simple: The terms of service were not clearly visible, but they were still there!

Another example involving websites' terms of service involves modifications to the policies. Numerous websites have terms of service that allow the webmasters to modify the terms at any time, for any reason, with or without notice. The terms state that it is my responsibility to check the terms of service for such changes. An example of a website like this is one website that I frequent: Youtube. Essentially, if all I want to do is watch a two-minute video that a friend sent to me, because he thought it was funny, Google (the parent company of Youtube) expects me to painstakingly eyeball every word of the terms of service to make sure that nothing new has been added.

Are such modifications upheld in court? With shocking consistency! Every time a person logs onto a website, that is a new act, in and of itself. Therefore, the courts have reasoned, it is a new chance to enter into a new contract.

But, let me give you an example that hits a bit closer to home, one that you may have a bit more first-hand experience in dealing with: Fine print. We we all know, fine print is perfectly legal. Commercials can use fine print to disclose the "catches" of their advertisements. Often, not only are these "fine print" words very small, but they are only on the screen for a split second. You essentially need to record commercial and pause the video at the right time, in order to actually get a good look at the fine print. Despite this, fine print is upheld as consistently as any other provision, because, while the terms stated in the fine print were not accessible with reasonable efforts, they were still accessible.

Besides, even if the subtlety of formal offers played a role in their legitimacy, this still would not help. When I sent them these terms, I did not place them in an inconspicuous part of the email. The terms had no fine print. Everything was laid out, in black and white; everything was all the same font, and everything was the same font size. Therefore, my formal offer was *not* subtle. It is no more subtle than if Wal-Mart themselves had posted a sign on their entrance door that began with "Read this before entering," and had various terms that the customer agrees to upon entering the store. You would enforce a sign like that, would you not? Why would you not enforce this?

The next argument that they are likely to introduce is that the contract was set up so that it would require more effort to refuse the contract than it would be to accept it, and that action, not inaction, constitutes the acceptance of a contract. However, this is another double standard. I consent to the notion that action, not inaction, constitutes the acceptance of a contract. For example, if my formal offer stated that failure to *respond* to that email would signify their acceptance, that probably would not have worked. However, the law does not recognize "inertia of actions." What I mean by that is that *continued* action is just as valid an action to signify their acceptance of a contract as blatant action that one goes out of his way to perform, such as affixing their signature to a dotted line.

Allow me to demonstrate this principal by example: Suppose, for a minute, that an employee sees a notice on his company's bulletin board about a new policy that will take effect in two weeks time, and that all employees' continued employment with the company after the new policy goes into effect signifies their acceptance of this new policy. We all know, quite well, that the employee would never stand a chance of saying that the new contract is invalid because it required more effort to reject (resignation from the company) than to accept. If an employee in that situation tried to raise that argument, he would be laughed out of court. The fact a business, who is on the receiving end of this kind of policy, for a change, can argue the same thing, and actually be entertained, is sad and absurd.

The defendants may then argue that this commercial transaction is necessary for their business,

and, therefore, the acceptance is coerced. This is simply untrue. First of all, in the case of *Doe v. Nebraska* (No. 02-2014NE), the United States Court of Appeals for the Eighth Circuit explicitly stated that the loss of federal funding, which is necessary for the agency's survival, is not coercion, even though the Appellate Court admitted that the loss of said funding would be "politically painful" to the state. The loss of a single commercial transaction, for a single gallon of milk, with the third largest company in the world would be so miniscule that no one would be any the wiser. I understand that they rely on this kind of business, but just because they need business does not mean that they need *my* business.

   The defendants are also likely to argue that the contract is unconscionable. However, if they want to argue this, they should not tell it to you; they should tell it to the arbitrator. I cite the precedent-setting case of *Buckeye Check Cashing, Inc. v. Cardegna*. Even though the contract was clearly unconscionable, because it violated Florida's usury laws, it was still referred to arbitration. The arbitrator must decide the validity of a contract, unless the arbitration clause itself is being challenged. 9 U.S.C. § 2 explicitly states that an agreement to arbitrate is *not* unconscionable; therefore, the conscionablity of everything else must be decided by the arbitrator.

   And finally, the defendants may argue that I am merely out to make a quick buck. Be careful if you side with them for this reason, because siding with them can have a devastating effect on the infomercial industry. Besides, even if the content of the contract shows that I am merely out to make a quick buck, that is something that the arbitrator must decide.

   Simply put, this contract was legitimately formed, and that is all there is to it. When I sent them this formal offer, they must have just thought that I was crazy, and ignored it completely. This case is nothing more or less than the businesses getting a taste of their own medicine, and the *only* reason that anyone is even the least bit hesitant to side with me is because, normally, the business does these things to the individual, but, this time the individual is doing them to the business.

   Wherefore, I respectfully pray that you issue the following declaratory relief:

1. A contract was formed between me and Wal-Mart, and
2. This contract contained a valid clause to initially refer all cases to semi-binding arbitration, or
3. The contract contained a clause to compel arbitration, but is only valid for binding arbitration, not semi-binding arbitration.

Either #2 or #3 will suffice for this declaratory judgment. If you refuse this declaratory judgment, please choose your reasons wisely. There are very few reasons that have not already been decided, before you; this is merely a legal role-reversal, but it is still valid.

   Thank you for your time, and please issue this declaratory relief, promptly.

                            Sincerely,
                            David Stebbins




David Stebbins
1407 N Spring Rd,
APT #5
Harrison, AR 72601

U.S. District Court,
35 E. Mountain St.
Room 510
Fayetteville, AR 72701