IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**DAVID STEBBINS**                                          **PLAINTIFF**

**vs.**

**WAL-MART STORES, INC.**                                   **DEFENDANTS**

## BRIEF IN SUPPORT OF MOTION

Comes now Plaintiff David Stebbins, who submits the following brief in support of the

enclosed motion to confirm an arbitration award.

First, I would like to cover the Facts. Then, I will move onto the law.

**Facts**

I contend the following facts:

On November 9, 2010, I sent Wal-Mart a formal offer for a contract. For this, I have no

exhibit that I can mail in, because it is on video. Instead, I will give you a direct link, on the

Internet, where you can see the footage of me sending this contract offer.

Here is exhibit A:

http://s270.photobucket.com/albums/jj93/dstebbin/?action=view&current=WalMartofHarrisonArkansas.mp4

The contract I sent them in Exhibit A states, among other things, the following:

1. Contacting me in any way constitutes their acceptance.

2. We agree to settle all legal disputes, not just those related to this contract, via semi-

   binding arbitration, where they are bound, but I am not, using the services of www.net-

   arb.com.

3. If they do not accept my offer to arbitrate within 24 hours [after they receive it], then I

   automatically win the amount requested, regardless of the merits of the case.

See Exhibit B for the text of that contract. Notice, I have censored a good deal of the

contract, because most of the terms are irrelevant to this case.

On the date of November 17, 2010, I received an email from Wal-Mart, which stated nothing but an invitation to call their regional office.  See Exhibit C.

On the date of November 21, 2010, I sent Wal-Mart another email, reiterating what I was doing, and implying how they may escape being bound by the contract.  See Exhibit D.

On the date of November 24, 2010, I received another email, from Wal-Mart, with the same reference number.  This email contained the exact same text in its body as the email shown in Exhibit C.  See Exhibit E for this.

I sent Wal-Mart an invitation to arbitrate a dispute for $660,000,000,000 (no, that is **not** a typo), on the date of November 24, 2010.  See Exhibit F.

As of at least December 4, 2010, Wal-Mart had not accepted the invitation to arbitrate. See Exhibit G.

Therefore, provided that my statements of law are also true, I am entitled to have this arbitration award confirmed, per the forfeit victory clause in my contract with Wal-Mart.

## Law

First, allow me to cover the basics.  As you are well aware, there are seven elements that a contract must possess in order to be valid and enforceable in a court.  These elements are:

1. Offer

2. Acceptance

3. Consideration

4. Intent to be legally bound

5. Capacity to enter into a contract

6. Meeting of the minds

7.  Legal (e.g. hitman contracts are not enforceable)

I assume that capacity is not in dispute.  Therefore, I will not comment on it beyond this two-sentence paragraph.

I will now move onto the second element of a contract:  Acceptance.

**Wal-Mart accepted the contract on November 24, 2010.**

As stated in the motion, Wal-Mart contacted me to discuss a matter that may or may not be directly related to the contract.  The contract explicitly stated that they agree to the terms, in the event that they initiate communications with me.

At first glance, this seems unconscionable.  Wal-Mart does not even have so much as the opportunity to negotiate, correct?

To answer that question, first allow me to set the stage with some binding precedent:  In 1999, in the employment discrimination case of Stafne v. Trevilla of New Brighton, Inc. (Case No. 99-3562), the United States Court of Appeals for the Eighth Circuit declined to rule on Ms. Stafne's plight regarding the judge's misallocation of the burden of proof in the "direct threat" exception.  The Eighth Circuit Court of Appeals felt that the issue was moot, as Ms. Stafne failed to even establish a prima facie case of discrimination, meaning that she would have lost anyway. It took another seven years, in the 2006 case of EEOC v. Wal-Mart Stores, Inc. (Case No. 06-1583), when this question actually became pertinent, that the Eighth Circuit Court of Appeals actually decided to rule on it, and state that the defendant holds the burden of proof.

I say that to say this:  Even though a legal question may seem important, and *should* be answered, eventually, the Stafne case sets binding precedent that a court must disregard all moot points, even if they appear pertinent at first glance, and render decisions only on points that will actually make or break the outcome of the case at hand.

To that end, I pose this question:  If Wal-Mart had responded with either an unambiguous rejection, or a counter-offer, would they have still been bound?  We don't know; we don't care. The court need not rule on whether they could have been exempt if they had contacted me, but only to explicitly reject the offer, or make a counter-offer, because they did neither.  Wal-Mart initiated communications with me, only to invite me for more communications.

It would be as if I emailed a friend of mine, with this formal offer for a contract, and, being the smartypants frat boy that this friend is, he responded saying "I'M COMMUNICATING WITH YOU! I'M COMMUNICATING WITH YOU!" over and over again.  At that point, he probably would be deemed to have accepted the contract, even if the court would not have found acceptance if he made a genuine attempt to make a rejection or counter-offer, correct?

For this reason, I respectfully move that you expressly save, for another day, the question of whether or not an unambiguous rejection or counter-offer would have been deemed an acceptance of this contract, and, instead, rule on whether or not the actions they *did* take signified acceptance.

To that end, allow me to cite more binding precedent.  I cite the Eighth Circuit Court of Appeals case, *Blizzard Entertainment, Inc. v. Jung* (Case No. 04-3654).  In this case, Blizzard Entertainment, Inc. ("Blizzard"), the publisher of the popular PC video game World of Warcraft, brought a suit against defendants Tim Jung and Rob Crittenden for violating a provision of the end user license agreement that prohibited them from reverse engineering the game programming to create an alternative server for gamers to play the video game on.  This end user license agreement was a shrink wrap contract, meaning that it was not available to the consumers until after they had purchased the game.  In order to reject the contract, they had to return the game to the store from which they purchased it and obtain a refund.

Despite this, the United States District Court for the Eastern District of Missouri upheld the license agreement as a valid and enforceable contract. On appeal, the United States Court of Appeals for the Eighth Circuit upheld that decision, claiming that the defendants-appellants could have avoided being bound by the contract by returning the game to the store from which they purchased it and obtaining a refund. Now, if the store would not have accepted a return once the game was opened, that might have been a different story, but there was no evidence to suggest that the defendants even attempted to return it, to see if the store would have accepted the return. See *Blizzard Entertainment, Inc. v. Jung* 422 F.3d 630; 2005 U.S. App. LEXIS 18973; 76 U.S.P.Q.2D (BNA) 1287; Copy. L. Rep. (CCH) P29,043.

I would like to add strength to this point by citing some persuasive precedent. This case is called *Ticketmaster, Inc. v. Tickets.com*, and took place in the United States District Court for the Central District of California. I will hereby abbreviate this case as "the Tickets case" or simply "*Tickets*" from here on out.

*Tickets* concerned a browse-wrap agreement – an online contract that binds the parties simply by browsing on that website. In this case, while the court did dismiss the plaintiffs' action, it offered to reopen the case and enforce the browse wrap agreement, if the plaintiffs could prove that the defendants actually *saw* the browse wrap contract. See *Ticketmaster Corp. v. Tickets.com, Inc.*, 2000 U.S. Dist. Lexis 4553 (C.D. Ca., March 27, 2000)

I also cite the case of *Hubbert v. Dell Corp.* This case concerns a browse wrap agreement where the contract was upheld and enforced, not because the consumer actually saw the browse wrap agreement, but because it was clearly visible. The link to the browse wrap agreement was at the top of the web page, rather than at the bottom, and it was bright blue in a white background, so it was highly visible. Therefore, any reasonable person – as defined by common

law – would have seen it.  Therefore, the court held Mr. Hubbert to the contract, and granted the

defendants' motion to compel arbitration.  See *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 835

N.E.2d 113 (Ill App 5 Dist., August 12, 2005)

These cases hint at a critical matter of law:  The slightest action – however subtle – can

still be used to signify your acceptance to a contract, so long as the proponent of that contract

can prove that you actually saw, or should have seen, the contract before you performed those

actions.  In fact, as *Blizzard Entertainment, Inc. v. Jung* clearly demonstrates, the slightest

*inaction* – as opposed to the slightest action - can constitute acceptance!

At that point, it appears that the element of a contract that is *truly* missing is offer, not

acceptance.

To that end, as I stated before, Wal-Mart performed an action that signified their

acceptance to my contract on Wednesday, November 17, 2010.  I reminded them of exactly what

they were getting themselves into, on November 21, 2010, and then, on November 24, 2010,

they performed actions that signified their acceptance to the contract, *again*!

On November 21, I laid everything out in black and white.  I held nothing back.  Even if

they did not bind themselves on November 17, they definitely did on November 24.  There are

no more excuses.

Simply put, the elements of "offer" and "acceptance" are established, and that's all there

is to it.  Now, we move onto the third element of a contract:  Consideration.

### Wal-Mart and I must arbitrate all legal disputes.

If there is an arbitration agreement in a contract, the arbitrator must decide the validity of

that contract, unless the arbitration agreement itself is being challenged.  See *Buckeye Check*

*Cashing Inc. v. Cardegna* (546 U.S. 440)

The validity of a contract encompasses all seven elements of a contract.

Therefore, the consideration of the contract, in its entirety, is out of your hands. You must look at the contract as if it stated nothing but the following:

"By initiating communications with me, in any way [other than to explicitly reject this contract], you hereby agree to submit all legal disputes with me – not just those related to this contract – to semi-binding arbitration, using the services of www.net-arb.com, where you are bound, by I am not."

That is it. That is all you can consider in making your ruling. Even the validity of the forfeit victory clause is our of the court's hands. In the event that there is a dispute as to the validity of the forfeit victory clause, it is still something that the arbitrator must decide.

Therefore, there is sufficient consideration. We both save time and money by referring all legal disputes to arbitration, unless the legal disputes at hand is not referable to arbitration. That, in and of itself, is consideration. In fact, the consideration in an agreement to arbitrate is so blatant that it can often stand alone as its own contract (i.e. when parties agree to arbitrate a legal dispute that has already arisen, and only agree to arbitrate that one case). Granted, there is a lack of mutuality of obligation, but, as I will soon explain, even that will not help Wal-Mart.

Conclusively, there is sufficient consideration – albeit peppercorn consideration - in this contract, up to the point that the court is authorized to decide. Now, we move on to the fourth element of a contract: Intent to be legally bound.

**A reasonable person would have intended to arbitrate all cases with me.**

Allow me to set the stage, not with binding precedent, or even persuasive precedent, for that matter, but with common sense that any jurist – even a self-taught one, such as myself – would know: Intent to be legally bound is not based on each parties' subjective intent, but on the

common law doctrine of the reasonable person.  If a defendant in a contract case claims that he never expected the plaintiff to actually sue him over this contract, that is just his tough luck.  A reasonable person would realize that there is an intent to be legally bound.  If the court looks at each parties' subjective intent, do you have any idea the kind of floodgates you would be opening?  Anybody could escape liability for virtually any contract, by merely claiming that they did not intend to be legally bound, and, then, it would be the plaintiff's neigh impossible burden to prove that the defendants did intend to be legally bound.  Instead, the courts would look to whether or not two reasonable people would have had an intent to be legally bound.

This burden is much easier to prove if the contract explicitly states that the parties agree to be bound.  This contract did, indeed, state the ability to be bound.  Therefore, there was an intent to be legally bound.  Wal-Mart is better off pleading the lack of some other element of a contract, or some other affirmative defense.

I now move to the sixth element of a contract:  Meeting of the minds.

### There is objective indication of assent.

According to Arkansas law, "meeting of the minds" is established, not by each parties' subjective understanding of the terms, but by "objective indicators of assent."  See *Thurman v. Thurman*, 50 Ark. App. 93, 900 S.W.2d 221 (1995).

This phrase, "objective indicators of assent," seems to imply two things:  First, the establishment of "meeting of the minds" is based on whether or not two reasonable people – as defined by common law – would have a meeting of the minds.  Second, the phrase "objective indicators" seems to imply that, in Arkansas, meeting of the minds is neigh indistinguishable from "acceptance," which I have already established.

My original offer, as well as my reiteration, was clear and unambiguous.  The contract

offer that I made is in the same language that I have seen numerous contracts be in. No reasonable person, upon actually reading the contract (which, as I have established by citing *Hubbert*, is a lot more moot than you may initially give it credit for) would have been confused as to the terms. Instead, it is much more plausible that Wal-Mart committed a unilateral mistake. However, as I will soon explain, the affirmative defense of "unilateral mistake" is not a valid affirmative defense.

I now move on to the seventh and final element of a contract: Legality.

### It is legal to refer civil disputes to arbitration.

As I have previously stated, the arbitration agreement is all that you have jurisdiction to consider. As a direct result, you must consider the legality of the arbitration clause, alone. Theoretically, I could have a contract with a hitman, and, as long as there's an arbitration clause, it is out of your hands. The actual murder itself may be referable to court, as it is a matter of criminal law, but the contract, and the breach thereof, is still in the hands of the arbitrator.

Therefore, as it is legal to refer civil legal disputes to arbitration, then the contract is legal, period.

I now move on to what I perceive as the most likely reason that Wal-Mart accepted the contract: Unilateral mistake.

### There was no fraud, and, therefore, no unilateral mistake.

Allow me to cite the precedent-setting case of Beckton, Dickson, & Company v. Accu-Path Medical Laboratory, Inc (Case No. 01-1907). In it, the United States Court of Appeals for the Eighth Circuit stated that "Arkansas law requires fraud before rescinding or reforming a contract because of a unilateral mistake, see Westlund v. Melson, 647 S.W.2d 488, 489 (Ark. Ct. App. 1983)."

There was no fraud in any of this. I did not lie to them about anything. I told them everything, in black and white. It is their fault, for not actually listening.

I cite even more binding precedent, with the case of *Mountain Home School District v. T.M.J. Builders, Inc., 313 Ark. 661, 858 S.W.2d 74 (1993).* According to that case, Arkansas law requires four criteria before a contract may be rescinded on the grounds of a unilateral mistake. They are (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to a material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake; (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.

The first criterion (that is singular for "criteria") is not established, because it is not unconscionable to refer legal disputes to arbitration, which is all that the court is authorized to decide. To be unconscionable, a contract must be so extremely one-sided in favor of the party with superior bargaining power that no reasonable person would accept it. A reasonable person would accept an arbitration agreement, evidenced by the fact that they do exactly that, all the time. Furthermore, it may be extremely one-sided, but only in *my* favor. Wal-Mart had the superior bargaining power before the contract was entered into. They are the biggest retailer in the world, and I am just plain old David Stebbins. Remember, "courts... are most frequently moved to help those who help themselves." See *Metro Motors v. Nissan Motor Corp.*, 339 F.3d 746, 2003 U.S. App. LEXIS 16508 (8th Cir. Minn., 2003)

Because the first criterion is not established, it is irrelevant if the other three are established. However, just for the heck of it, I will entertain the third criterion.

Could the defendants have easily avoided the mistake, if they had taken greater care?

You tell me!  I sent the offer to them, twice.  On the second time, I explained to them what they were getting themselves into.  It merely fell on deaf ears, but that is not my problem.  They could have easily know what was going on, if they just took two minutes, upon actually getting around to reading my email, and actually read it, instead of just glancing over it, deciding that I'm in over my head, and calling my bluff.

As an *ad abundantiam*, I cite the semi-binding precedent of HealthEast Bethesda Hospital v. United Commercial Travelers of America (Case No. 08-3665).  This was in the Eighth Circuit, but applies Minnesota state law, as that was the state that would otherwise have personal jurisdiction, but for the federal courts having jurisdiction, which is why I call this precedent "semi-binding."

Anyway, in that case, the Eighth Circuit Court of Appeals affirmed the ruling of the District Court for the District of Minnesota, which denied the defendants' affirmative defense of unilateral mistake.  The reason for this denial is that "it was a sophisticated party that bore the risk of mistake and could have avoided it by investigating Hansen's policy."  Remember, the district court's reasoning was affirmed, therefore, making this reasoning binding precedent.

As a result, defeating the affirmative defense of "unilateral mistake" is as easy as proving that Wal-Mart is as sophisticated a company, or more so, than the UCT, and proving that they could have easily avoided the mistake, if they had merely taken greater care.

The sophistication of Wal-Mart is a given.  I do not even need to cite any sources; everyone knows that Wal-Mart is the biggest retailer in the world, and practically has a sinkhole of resources at their disposal.

If you rule against me for this reason, Your Honor, not only will you violate clear binding precedent that states, without ambiguity, that fraud, unconscionability, and an exercise of due

care are all prerequisites to relief on the basis of unilateral mistake, but you would be opening the flood gates for a ton of abuse. Virtually anyone could get off the hook, on a contract, because they didn't read it. If Wal-Mart 1) posted a sign on their front door, 2) that sign is in plain view, 3) the sign states that, by entering the store, the consumers agree to be bound by the following terms, and 4) a consumer simply ignores the sign, and walks into the store without blinking an eye, they should not be bound by the terms.

I now move on to the second most likely defense: The arbitration agreement lacks mutuality of obligation.

### Mutuality of obligation is a non-issue in federal court

I cite the 2008 case of Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC (Case No. 08-3448), or SSC v. AEDBS, for short. In this case, the United States Court of Appeals for the Eighth Circuit ruled that "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration."

So, at this point, it merely becomes a matter of establishing consideration.

I concede that the arbitration agreement only called for semi-binding arbitration, but that is all I need. Remember, in the case of SSC v. AEDBS, the arbitration agreement contained even less obligation, on the part of AEDBS, than mine does. AEDBS still retained the right to initially litigate any disputes, whereas I must initially refer all cases to arbitration. Only after the arbitration is over, may I decide whether to take that arbitration award, and run with it, or risk it all for a better judgment in litigation.

AEDBS had the option of whether or not to even so much as compel arbitration. They lacked a single commitment in the arbitration clause, alone. Therefore, the court had to look elsewhere for consideration. I, on the other hand, have to initially refer all cases to arbitration,

unless the case cannot be arbitrated, as a matter of public policy.

I need but a single peppercorn of consideration, on my part, for the contract *as a whole* to be supported by consideration. The contract, as a whole, therefore, has consideration, negating the need for the arbitration agreement to have equality of obligation.

I am curious – even eager – to hear any other affirmative defenses that they might want to raise.

However, whether this contract is enforceable or not, there is one thing that this case is not, and that is a frivolous lawsuit. "Frivolous," in the eyes of the law, has a very different definition than in the eyes of the general public; case in point, McDonald's Coffee. To be frivolous, in the eyes of the law, it must be one that has absolute, positively, **no** possible legal basis, upon which it can be based. I have cited numerous case laws that affirm my position on this case, which means that there is a possible legal basis.

Wherefore, I respectfully pray that you promise to confirm the arbitration award that I have, due to the forfeit victory clause, in the amount of $660,000,000,000.00, or, alternatively, compel Wal-Mart to arbitrate the validity of the forfeit victory clause with me, and award other relief as the court deems appropriate. It is so requested, on this 18th day of February, 2011.

David Stebbins
1407 N Spring Rd,
APT #5
Harrison, AR 72601
Phone: 870-204-6024
stebbinsd@yahoo.com

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

**DAVID STEBBINS**                                                  **PLAINTIFF**

**vs.**                                   **10-3086**

**Wal-Mart Stores, Inc.**                                          **DEFENDANTS**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of
        Plaintiff's Motion to Correct Judicial Error.
was served on

Jeffrey Spillyards
425 West Capitol Avenue
Suite 1800
Little Rock, AR 72201-3525
Phone:  (501) 688-8891
Fax:  (501) 688-8807
jspillyards@mwlaw.com
Attorney for:  Defendants

by mailing a copy via to 425 W. Capitol Ave, Suite 1800, Little Rock, AR 72201, on the 18th day
of February, 2011.

David Stebbins
1407 N Spring Rd,
APT #5
Harrison, AR 72601
Phone:  870-204-6024
stebbinsd@yahoo.com